**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 25 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANGELO BULONE, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant-Appellee. | No. 24-4241 <br><br> D.C. No. <br> 3:20-cv-03719-VC; <br> 3:16-md-02741-VC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted September 16, 2025
San Francisco, California

Before: M. SMITH and BUMATAY, Circuit Judges, and BARKER, District Judge.[**]

This appeal arises from a longstanding multidistrict litigation (MDL) consolidating claims against Defendant-Appellee Monsanto Co. involving its sale of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable J. Campbell Barker, United States District Judge for the Eastern District of Texas, sitting by designation.

Roundup-branded herbicides. *See In re Roundup Prod. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.). The consolidated cases broadly allege that exposure to a chemical found in Roundup, glyphosate, causes non-Hodgkin lymphoma (NHL), a type of blood cancer. In the matter on appeal, the district court that has presided over the MDL since 2016 excluded Plaintiff-Appellant Angelo Bulone's sole expert on the issue of "general causation," leaving an unbridgeable gap in his case, and entitling Monsanto to summary judgment.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and now affirm.

The parties are familiar with the facts of this case, so we do not recount them here except as necessary to contextualize our ruling. We review the district court's exclusion of expert testimony for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).

Mr. Bulone contends that the district court exceeded its discretion by excluding his general-causation expert, Dr. Luoping Zhang, on the ground that her disclosures were unreliable under *Daubert v. Merrell Dow Pharms., Inc. (Daubert I)*, 509 U.S. 579 (1993). His chief argument is that Dr. Zhang's disclosures, which

---

[1] "In a 'toxic tort claim for physical injuries,' a plaintiff must 'show that he was exposed to chemicals that could have caused the physical injuries he complains about (general causation), and that his exposure did in fact result in those injuries (specific causation).'" *Engilis v. Monsanto Co.*, --- F.4th ----, 2025 WL 2315898, at *2 (9th Cir. Aug. 12, 2025) (quoting *Golden v. CH2M Hill Hanford Grp.*, 528 F.3d 681, 683 (9th Cir. 2008)).

consisted of just two academic articles authored or co-authored by Dr. Zhang,[2] were peer-reviewed and published before she became involved in Roundup litigation, so her admission at trial is warranted. His premise is correct, but the conclusion doesn't follow. Precedent indeed establishes these factors' significance. *See, e.g.*, *Daubert I*, 509 U.S. at 593; *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1316–17 (9th Cir. 1995). But the same precedents also make clear that these factors are neither "dispositive," *Daubert I*, 509 U.S. at 594, nor "conclusive," *Daubert II*, 43 F.3d at 1318 & n.10. On the contrary, "the law grants a district court . . . broad latitude when it decides *how* to determine reliability" based on a case's particular facts. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). This inquiry is highly "flexible." *Id.* at 141.

In this matter, the district court considered both factors that Mr. Bulone invokes. It simply determined that neither could overcome the many flaws it identified in Dr. Zhang's *Exposure* paper, a meta-analysis of the epidemiological literature on glyphosate and NHL. Among the reasons given, the district court explained that Dr. Zhang neglected studies postdating her analysis that tended to undermine her results—studies Dr. Zhang admittedly would have included had she

---

[2] *See* Luoping Zhang, et al., *Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence*, 781 MUTATION RES. REV. IN MUTATION RES. 186 (2019) (*Exposure*); Iemaan Rana, et al. [including Dr. Zhang], *Mapping the key characteristics of carcinogens for glyphosate and its formulations: A systematic review*, 339 CHEMOSPHERE 139572 (2023).

updated her analysis. Her paper also omitted large swaths of data from the Andreotti (2018) study, which Dr. Zhang admitted was the highest quality study she examined. The paper mixed data from studies that evaluated subjects' exposure levels with studies that did not, and combined studies that stratified data using "different exposure cut-offs," creating apples-to-oranges comparisons. And, of particular concern to the district court, Dr. Zhang chose to include data from one study (Eriksson (2008)) that failed to adjust for a rival cause of NHL—exposure to pesticides other than glyphosate—despite the availability of adjusted data. The paper then inaccurately implied that Dr. Zhang counted this study as one containing adjusted data. In the district court's view, the combination of these and other defects rendered Dr. Zhang's meta-analysis unreliable.

Mr. Bulone responds that certain (but not all) of these criticisms target mere design limitations found in other scientific literature. Yet that does not rebut the district court's broader point that these flaws and limitations, taken together, undermine the reliability of Dr. Zhang's threadbare disclosures. On that point, we cannot say the district court's reasoning is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010).

Next, Mr. Bulone asserts that the district court improperly assumed a factfinding role in the *Daubert* proceeding, but he is mistaken. This is not a case

4

24-2932

where the district court rejected the expert's "ultimate conclusions" or doubted her "credibility," as in *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024–27 (9th Cir. 2022). Rather, the district court centered its analysis on the *methods* Dr. Zhang employed and her *application* of those methods, just as Federal Rule of Evidence 702 contemplates.

Nor did the district court "create[] the problem[s] of which it complains," as Mr. Bulone asserts. As he concedes, district courts have discretion to question putative experts in *Daubert* hearings. *See United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (affirming the admission of an expert where "the district court conducted extensive voir dire" of expert's testimony to assess its "reliability"). That some of the deficiencies in Dr. Zhang's methodology surfaced while the district court exercised that discretion is immaterial. Dr. Zhang might not have expected the district court to conduct such a searching inquiry into her methods, but that was ultimately the district court's prerogative. And given *Daubert*'s flexibility, we cannot say the district court exceeded its discretion by doing so, especially in view of the court's near-decade of familiarity with the facts, the issues, and— specifically—the scientific literature relevant to this Roundup litigation.

After excluding Dr. Zhang's meta-analysis as unreliable, the district court held that Monsanto was entitled to summary judgment because Mr. Bulone lacked a cognizable expert-opinion on general causation. We affirm on this point as well.

Mr. Bulone avers that the district court overlooked Dr. Zhang's second paper—a systematic review of the "mechanistic" evidence assessing the effect of glyphosate exposure on characteristics of carcinogens. But that's not the case. The district court considered this paper, too, but found that it offered no "opinion about causation."

We perceive no reversible error here either. On a previous occasion we had to consider a case from the Roundup MDL, we affirmed the plaintiff's admission of three general-causation experts who opined on the relationship between glyphosate and NHL. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 963–64 (9th Cir. 2021). But there, we held that mechanistic evidence (or "cell studies") could only help "show causation so long as there is evidence of an association between glyphosate and NHL in humans within the epidemiological literature." *Id.* at 963. And yet, the only such epidemiological evidence that Dr. Zhang offered was the meta-analysis, which, as just discussed, the district court excluded. Under *Hardeman*'s reasoning, Dr. Zhang's mechanistic paper alone cannot support a cognizable inference of general causation. *See id.* The district court was therefore justified in granting summary judgment in Monsanto's favor. *See Engilis*, 2025 WL 2315898, at *2.

**AFFIRMED.**